Welcome to the Fourth Circuit. We're happy to hear from counsel on our first case 24-13-24 Alvarez Ronquillo versus Bondi. Good morning, Your Honors. May it please the court, John Pang with Georgetown University Law Center's Appellate Litigation Clinic. With the permission of the court, third-year law student Angeline Superable will present arguments on behalf of Petitioner Genovevo Alvarez Ronquillo. Thank you very much, counsel. Happy to hear from you. Thank you, Your Honor. Good morning, and may it please the court. Mr. Alvarez Ronquillo, a lawful permanent resident of this country for 38 years, is not removable because his conviction for the unlicensed sale of firearms under 18 U.S.C. § 922a1a is categorically broader than illicit trafficking in firearms. Mr. Alvarez Ronquillo was convicted under § 922 for selling firearms without a license. By its plain text, a seller could be convicted under § 922 for selling outside of the scope of one's license. Under § 922, it makes no difference who that buyer was. Whether the buyer was a police officer or a felon, if the seller lacked a license at the time of the sale, the conviction stands. Compared to § 922's broad sweep, the IMO's trafficking in firearms is more narrow. It requires the deliberate transfer of a firearm to someone barred from owning one. It's one thing to sell without a license. It's another thing entirely to know that someone can't legally own, carry, or possess a gun and still hand it to them. Without a categorical match between his unlicensed stealing conviction and the trafficking in firearms removal ground, Mr. Alvarez Ronquillo is not removable. Congress gave us its definition of trafficking in firearms in § 933. In fact, it is the only definition of trafficking in firearms. When did they do 933? 2022. And we're trying to understand what the words were used in 1989? 1988. Why would we look? I understand that sometimes we look at related subsequent enactments, but that seems like a particularly odd place to look for a definition. It doesn't actually define the word anyway, but it seems particularly odd to look at the definition or look to a statute to imply a definition, which I think is what you're really saying, from 30 years later. Why should we consider that? Your Honor, it's the only piece of evidence we have from Congress confirming what it means when it says trafficking in firearms. Why do you think it needs to be from Congress? Don't we sort of typically say, the Supreme Court tells us over and over again, we look at the ordinary understanding of the words? This isn't some Congress-specific story. It seems like to me all the time we look at the ordinary understanding of words, and there are lots of ways to understand that. And dictionaries are one. You've pointed out a number of the problems with dictionaries that are well documented. But typically we look at the time of the enactment. And so we might look at something and sort of try to understand what the word trafficking means. We use corpus linguistics. We do a comparison to how that language is used at the time. We don't typically look 30 years later and try to imply, by negative implication, which is what you're saying, when they define one type of trafficking, that that's the only type of trafficking. To understand what it means. We believe that when we look at two contemporaneous sources from the time of the enactment of trafficking in firearms and the INA, that dictionaries fall short. And so we try to reckon with this, as the Supreme Court did in Esquivel-Quintana, looking at other sources that we can glean Congress's purpose and intent and really confirm what they meant at the time of its enactment. So that's what we think 933 is. It's a definition that confirms what Congress meant. Did the Supreme Court look at something that was 30 years later and imply a negative inference from it? That doesn't seem like what the Supreme Court did at all. That's correct, Your Honor. But it did look to, as you mentioned, a closely related federal statute. And we think that the phrase trafficking in firearms only being defined there in 933 is good evidence and persuasive evidence for finding that trafficking in firearms entails the deliberate transfer of a firearm to an unlawful recipient. So what's wrong with the BIA's interpretation, the ordinary meaning that they apply? What's wrong with that? The Board's interpretation relies on a series of cases and decisions that it put forth, specifically Matter of Davis, to understand what trafficking meant in the controlled substances context. We think that controlled substances and firearms are distinguishable. We see that in the nature of the objects themselves. For controlled substances, controlled substances are inherently contraband. They're already illegal by nature. But is that true? Because I don't actually think that is true, right? I mean, I can possess heroin if I have a license to possess heroin. Now, admittedly, it's really hard to get a license to possess heroin. And unless I'm like a medical research company, I probably will not get a license. But it's not inherently illegal to possess heroin. It's illegal to possess heroin without an authorization from the FDA. That's exactly right. And I should clarify that it generally is illegal to have contraband, in this case controlled substances, as a general person. But for firearms, it's generally legal to own or possess or carry a gun so long as... How much work is generally doing there? Because I took Judge Hyten's question to say, just like with firearms, there is legal dealing in controlled substances, right? Take oxycodone, right? The heroin example is one, but oxycodone is another one, right? It is a controlled substance. If you sell it without the proper authorization, then it's illicit trafficking, right? So like a pharmacist who is selling it out of the back of his store, right? He's not doing it in accord with his license. And so that's trafficking in oxycodone in the same way that a gun shop, an FFL, who might properly use the forms and do everything at the front of the store, if they're selling it out of the back without the right paperwork or the like, that that's trafficking in firearms. I guess I'm not sure I understand the distinction. It is true that trafficking goes both ways, right? Both on the upstream, are you authorized to do this? And on the downstream, are you giving it to someone who is then authorized? But I don't see a distinction between the two. Help me understand why that is. I think what I'm focusing on is the ownership or the possession or the carrying of that object, controlled substances versus firearms. But if I've got a prescription for oxy, right, then I can have it, right? So like if my doctor's prescribed oxycodone to me because I have a bad back, like I'm entitled to possess it. If I don't have that prescription, I'm not entitled to possess it, right? That seems like the same downstream concern that we've got with firearms. But we see across the United States, you don't need a permit to own a gun. A father can give his daughter a gun in the safety of their own home and that daughter can use that gun or have that gun legally without any sort of authorization. That's just an opposite default, right? So in the oxy context, I need an affirmative authorization. In the firearms context, it's just the absence of a negative authorization, right? But like that, I don't understand why the default makes a difference here, right? There are a group of people that are permitted to have oxy and there are a group of people that are not. If you sell the drugs to somebody who's not permitted, that's bad and it's trafficking. Same thing with guns. I think that's right, Your Honor, but 922 goes broader than that. 922 specifically, one can be convicted under 922 for selling outside of the scope of one's license. So an individual could own a storefront, be selling guns out of that storefront for years, make a sale from their home outside of their storefront and be convicted. So finding that... And the same thing, right, for a pharmacist, right? So the pharmacist that sells out the front of his store. I mean, this is the example I just gave, right? So yeah, I mean, I understand you might think that that's different, but I don't see how it's different between narcotics or controlled substances and firearms. That's the rub I'm not seeing. To me, those seem like exactly analogous scenarios, right? There's upstream, some people are authorized by law to do this in certain ways, and there's downstream. Some people are authorized to receive them or possess them and others are not. I think for the trafficking in firearms conviction, you're really hitting on a point of where is that going? And that's what our definition from 933 points attention to. We look at the nature of the recipient. Are they unlawful? Are they authorized to have a gun or are they not authorized? And so we see in trafficking in firearms something more than just a regulatory or licensing offense, something more focused on the proliferation of criminal networks or something more... So if I took 933 on its face and thought it was relevant for some reason, why would I take that negative implication? So 933 says this is trafficking in firearms. It includes selling to people who are prohibited, right? I mean, that's what 933 says. But why do I infer from that that trafficking in firearms does not include what you call a licensing issue, right? The fact that 933 includes one type of trafficking, why would I infer that trafficking in firearms does not include the other type of trafficking that we would naturally think of, which is the pharmacist dealing out of his house or the FFL selling in the alleyway behind the store? We do... I believe that we do not see it as the same thing because... Why? Because of the nature of that transaction. Sure, it could be someone who is nefariously intending to sell things, sell guns outside of their storefront and get them to the wrong people, but it could also be an innocent person who's just trying to make a sale and who has complied with the government on its regulations, getting that license, getting license for their storefront, etc., having that for several years, renewing it, and then conducting a sale out of their home. They would be liable for a 922 offense. I think that doesn't respectfully look like trafficking in firearms. Can I ask you a different question about your 933 argument?  So one of the arguments I see in your brief is that interpreting the statute a different way would render 933, you said, largely redundant, is the words you used in your brief. Can I just... Why? Here's the question. Can an FFL violate 933? Yes. Can an FFL who is filling out all the forms violate 933? Yes. So doesn't that show there's not a complete overlap between the two statutes regardless of how we construe them? Like one of these statutes is about selling to anyone you know who is not allowed to have a firearm, and that's a prohibition that applies to you whether you're an FFL or not. And then there's another statute that says, subject to certain exceptions, yada, yada, yada, you can't sell firearms without a license. I mean, I understand those are overlap, and I understand that some of the people who are subject to regulation could violate both statutes, but I don't see how it renders them redundant because if an FFL who has a license and scrupulously fills out all the forms and does all the other regulatory stuff, if that person sells to someone they know is illegal, is not allowed to possess firearms, that FFL has violated 933, right? I hear you, Your Honor. So how would the statutes be redundant then? I think really we're just trying to focus on that there is some overlap but there also is not overlap, and that is the critical component when we're evaluating categorical approach cases. It's whether every single offense under 922 could also be trafficking in firearms. That's what we're considering. So in your brief you presented as an argument about 933 and then you said that 933 supports you and then this guidelines provision supports you. But does that guideline enhance the offense of anyone who is convicted under any statute other than 933? Yes, it does. Okay. What other statutes have those? It includes a host of statutes under 922. Okay. So I guess could you... I know you're starting to get low on time and I want to give you a chance to wrap up but could you just walk me through what you think the significance of the guidelines... So I think I noticed the argument about 933. Could you tell me sort of the capsule summary of your argument of the guidelines provision? We think it confirms that definition, trafficking in firearms, because it too reflects that unlawful transfer to an unlawful participant or recipient. And that's important because the sentencing guidelines, whereas 933 was enacted in 2022, we have further evidence that, contemporaneous to the time that the INA passed the aggravated felony provision for trafficking in firearms in 1991, the sentencing guidelines too give an enhancement, provide an enhancement for what looks like trafficking in firearms behavior as we've defined it through 933. Before you run out of time, isn't proof of profit an issue in this case? Is proof of profit an issue in this case? In our alternative argument we present a proof of profit exception. So what's your argument? If this court were to accept the board's definition of trafficking as trading or dealing, under the proof of profit exception there is no requirement for a bargain for exchange or a two-sided exchange. In fact, in the proof of profit exception we see the word disposition used, whereas in other parts of 922 we see sale or exchange. Disposition insinuates that it's a one-sided action or behavior that one is taking. So under the proof of profit, one could be found liable under 922 for giving away a gun with the purpose of creating, committing criminal acts or for also perpetuating terroristic acts. My other question was, you started out by saying categorical approach. Do we use the categorical approach or the modified categorical approach in this case? We use the categorical approach in this case. Why? We believe that the statute is not divisible and that we see, we have seen from this circuit that based on the actions or the verbs being used, I see I'm out of time, may I briefly? You can answer, of course. Thank you. That we do not divide statutes based on the actions, so long as the actions that we are contributing to the same purpose, the unlicensed dealing. You've got some time on your clock. Thank you, counsel. Thank you. Good morning and may it please the court. My name is Catherine McKinney and I represent the Attorney General in this matter. Your Honor, petitioner's offense under 8 U.S.C. 922-A1A is categorically an illicit trafficking offense under 8 U.S.C. 1101-A43C.    The board's definition of illicit trafficking as unlawful trading or dealing is the best reading of the statute and the court should adopt it as its own. Using the traditional rules of statutory construction, the agency decision here in this case is correct. First, turning to the plain language of the ordinary meaning of the text of the statute here at the time of enactment, here the board appropriately used the ordinary meaning of illicit trafficking as unlawful trading or dealing based on the dictionary definitions at the time. The Board of Matter of Davis cited the Black Star Law Dictionary from 1979 which defined trafficking as trading or dealing and as the Ninth Circuit in Chacron observed, this definition of trafficking as trading or dealing is pretty much consistent from that time until present. So this definition comports with the plain language of the statute. It also comports with the structure and context of the statute. Here we note that there's an omission of a specific statutory cross-reference with respect to trafficking and certainly Congress could cross-reference had it intended to cross-reference one of the statutes including the two that petitioners counsel advocate for, but they didn't. Additionally, looking to the context here, here there's a presumption, there's a normal rule that identical words used in different parts of the same statute carry the same meaning. And here, this interpretation is also consistent with the Supreme Court's interpretation of trafficking in Lopez to mean commercial dealing. It's also worth noting that the board's decision here or the board's definition of illicit trafficking as unlawful trading or dealing is consistent with all the circuit Court of Appeals precedent interpreting that term for purposes of 43C. Most notably, as noted in the government's brief, the Ninth Circuit in Chacron analyzed this issue and noted that the board's definition as found in Matter of Davis was persuasive. Whether or not the court there applied Chevron deference or Skidmore deference, even a lesser form of deference, the board's definition was persuasive, went to the board's reasoning, the board's looking to the dictionary definition for a determination of what these words ordinarily mean at the time of enactment and found that persuasive. So, for purposes of this question, let's just assume that I'm aware of, we start with the text and if the text is unambiguous we end there and we may never get there, blah, blah, blah. Just assume that I'm fully aware that you're going to say all those things in response. Assuming for the sake of argument we were to consider these statements from the legislative history, what do you suggest that we make of the fact that it sort of seemed like a bunch of Congress people in the congressional record didn't think the pre-existing law was a trafficking statute, right? I think you're referring to what particular, yeah, some of the legislative history noted in the brief. The first of our argument is going to be that's not what this text says, we don't, I know all that. But let's assume for the sake of argument that we get to considering what do you think those statements are about? Two responses. If I remember correctly, the legislative history cited in that brief that it doesn't do with respect to trafficking what we need it to do now. So it doesn't mean that there wasn't a provision addressing trafficking, but perhaps they needed something more explicit if you're referring to the most recent 2022 illicit trafficking position that it didn't do what it needs, it doesn't do with respect to trafficking. I believe there was an additional clause there. But the second thing... So what it didn't do is the thing that I asked your friend on the other side. Existing law doesn't tell a licensed FFL you can't sell to someone you know who's not allowed to access firearms? Is that the thing that was missing? That I'm not entirely sure what they were referring to as the thing that was missing. And then to respond, I guess, in a second way to your question... Don't tell me you can't figure out what the legislative history means. Please don't suggest that. I just, the other, if you do get there to that point, if you look at page 36 of Respondent's Brief, looking at the Gun Control Act enacted in 1968, there's at least some reference there to what they're trying to address is in part the traffic in firearms. I mean, perhaps we didn't use the exact words illicit trafficking like we do in the most recent one. But I don't think that it would support the proposition that there was nothing addressing the unlawful traffic in firearms. And again, only if you get there. Sure, sure. I understand. And so, speaking of illicit, like, I will say, just as a matter of initial preliminary... Well, let me ask a threshold question. As I read the government's brief, you understand illicit to essentially mean unlawful or unauthorized, right? That's what the board said in Matter of Davis and that they were relying on blacks for that. And I believe it was unlawful, prohibited, but essentially they narrowed it down to unlawful. I will say, for what it's worth, my gut reaction to that word is that that's a weird way of... Like, first of all, it's just unnecessarily fancy for no apparent reason. But second of all, when I think of illicit, I guess in plain ordinary, we start with the text. I would say that for me, that's not the most obvious or inevitable definition of illicit to me, right? I mean, there's another alternative connotation of illicit that to me is like surreptitious or secretive or furtive, right? Like, so what do I do with the fact that for me as a matter of plain meaning, it doesn't strike me as obvious that illicit just means unlawful. Well, I guess the response to that would be that you can look to the dictionary as the board did, looking to blacks. And that's how blacks defined it as one way of evidencing what the ordinary meaning would be at the time. And it sounds like Your Honor might perhaps be a bit skeptical as to that's all it encompasses with the dictionary definition. And I think it might be helpful for Your Honor in that question with respect to licensing and consent with the licensing type questions. I believe the Second Circuit in the Kohali decision in 2001 does have something to say. Or at least they rejected a similar argument there because there the argument was that the act of exporting firearms was prohibited only in the absence of a valid license. And then what the Second Circuit was responding was that's immaterial if it was unlawful. And then, of course, if the definition of trafficking had been met. So I think that might be helpful to Your Honor. And I do believe that's on page 108 in response to there. And also just going back that this has been a consistent interpretation. Davis was 1992 and the courts that have addressed it since have uniformly not had issue with it. Many of them have deferred to that both in the 43B context and in the 43C context. So this is a fairly consistent definition going forward which would lend support to the proposition that it meant then and it means now exactly what the Board and the Circuit Courts that have addressed it have determined that it does. So it's the government's position that the agency's decision is correct from the plain language of the statute. And even if that wasn't clear, the agency's decision is deserving of respect under Skidmore, which is what the Ninth Circuit and Chacron was willing to say. It was persuasive at a minimum even if you didn't apply Chevron deference. So we urge... Not because we literally can't apply Chevron. I'm just acknowledging that some of the decisions before there did defer applying Chevron, but the Ninth Circuit decision was saying that applying Chevron or applying Skidmore, which is what's available now, that the Board's decision was persuasive. So we urge the Court to adopt that definition as its own. Turning to the application of that definition to the offense at issue here, it's the government's argument that that offense is a categorical match to the Board's definition of unlawful trading or dealing. And this Court should find the same way that the Ninth Circuit did in Chacron when they were analyzing the same statute and they found that it necessarily entailed unlawful trading or dealing. That statute prohibits anyone, except someone who's licensed, from engaging in the business of importing, manufacturing, or dealing in firearms. So here, by its very definition, it's categorically someone is engaging in the trade or dealing of firearms, categorically with that language. And then, of course, we have unlawful met by the fact that you're not lawfully doing it here. So this Court should find, as the Ninth Circuit did, that there's a categorical match. And to get to your Honor's question about the proof of profit exception, the government disagrees there that that would carve this out of the definition for the reasons that we've noted in the brief. That exception only applies to whether or not the government has to prove profit. But the exception only applies if everything else that isn't elaborated in the statute applies there, too. So you still have to be engaging in the business. You still have to be engaging in business as is defined further in the statute in 921. And that means regular and repetitive purchase and disposition of firearms. The only thing that the proof of profit exception goes to is whether or not the intent has to be predominantly for profit motive, or if there can be an additional motive or an additional predominant motive. So it's the government's argument that that wouldn't pull it out of the unlawful trading or dealing definition because it would still be unlawful and you'd still have trading or dealing. So the government argues that this Court should adopt the Board's decision for illicit trafficking as unlawful trading or dealing and also that this Court should conclude that petitioner's offense is a categorical match. If the Court has no further questions on the other issues, like venue, then we urge the Court to deny the petition for review. Thank you. Thank you, Counsel. Three points on rebuttal, Your Honor. First, on Skidmore. Second, on the full phrase of illicit trafficking in firearms. And three, on the proof of profit exception. Under Skidmore, my colleague says that courts have deferred to the Board's definition of trafficking in the 8 U.S.C. Section 1101    A43C context. We've seen that. It's the only decision that we see that in in Chacon out of the Ninth Circuit. And one thing that that Court did not get the opportunity to consider was Congress's confirmation of the definition of trafficking in firearms in 933. We think that's an important distinction that should lead this Court to find persuasive 933 is relevant, is indeed a closely related statute, and is persuasive in this case. On that note, my colleague also mentions... I'm just going to clarify, I just can't help because my good friend, Judge Hytens, wanted to talk about the legislative history. And so I just can't help myself. So when I read the legislative history, it seems to read the opposite of what you're telling me to say, right? So you're suggesting that 933 like defines the waterfront of what trafficking means, right? So that like trafficking means what 933 says and nothing more? But the legislative history, at least the, you know, friends that you've picked out of the crowd here, says that there's no statute prohibiting firearms trafficking in the way we need to do it. Doesn't that actually suggest to us that there are other ways in which it is being prohibited, but like this way, that is, to prohibited end users has not been addressed? Doesn't that actually sort of suggest that your reading of 933G is just wrong? It's only one way of trafficking a firearm? Not necessarily, Your Honor. In the context of legislative history, it's very possible that that statement suggests that states are criminalizing certain types of conduct, but that trafficking in firearms as a federal offense has not been applied. Your suggestion, I mean, I get we're trying to read it for all it's worth, but you're suggesting that the Congress was saying there's no criminal statute prohibiting firearms trafficking in the way we need to do it, that that's a reference to states? Well, I think it's definitely possible because under the categorical approach as we know from Esquivel-Quintana, we look at state criminal codes as well. I think Congress would have a reason to confirm that definition in 933, in writing 933, if it did not believe that either state courts or other courts were not applying it in the way that was as clear as possible, as clear as day as we have it in that blank black ink. To my second point, the government does not provide a definition for the full phrase illicit trafficking in firearms. This is important because dictionaries don't give us a definition either. Can I ask if you considered using corpus linguistics to sort of do this? I mean, the typical move that we're making where you have a different meaning based on context, like corpus linguistics seems like the tailor-made tool to use there. Is that, I mean, I just wondered why I didn't see that. I think that it could be relevant, Your Honor. I think we wanted to stick or hue closely to Congress's own words, which is why we believe the right definition is what Congress put forth in 933. As there is no definition for trafficking in firearms, we do see in Black's Law Dictionary, however, there's a definition for human trafficking or trafficking in persons. There's also a definition for drug trafficking. That's why we believe when there's no definition for trafficking in firearms that the government's use of dictionaries falls short. And that's why we start to look at other sources as the Supreme Court has. Thank you, Counsel. As we have a tradition in the Fourth Circuit where we come down and greet counsel, given the particular circumstances, Judge Hytens and I will come down and greet counsel and we'd ask for you to come up to the bench and greet Judge Floyd up here.
judges: Julius N. Richardson, Toby J. Heytens, Henry F. Floyd